**Slip Op. 12-**123

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| HUBBELL POWER SYSTEMS, INC., <br><br> Plaintiff, <br><br> GEM YEAR INDUSTRIAL CO., Ltd., <br><br> Consolidated Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> VULCAN THREADED PRODUCTS INC., <br><br> Intervenor Defendant. | Before: Jane A. Restani, Judge <br><br> Consol. Court No. 11-00474 |

## OPINION AND ORDER

[Commerce's <u>Final Results</u> remanded in antidumping duty review matter.]

Dated:  September 20, 2012

     Kevin M. O'Brien and Christine M. Streatfeild, Baker & McKenzie, LLP, of Washington, DC, argued for Plaintiff Hubbell Power Systems, Inc.  With them on the brief were Michael E. Murphy and Kevin J. Sullivan.

     Peter J. Koenig, Squire, Sanders & Dempsey, LLP, of Washington, DC, for Consolidated Plaintiff Gem Year Industrial Co., Ltd.

     Jane C. Dempsey, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for Defendants.  With her on the brief were Stuart F. Delery, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director.  Of counsel on the brief was Daniel J. Calhoun, Attorney, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, of Washington, DC.

Frederick P. Waite and Kimberly R. Young, Vorys, Sater, Seymour and Pease, LLP, of Washington, DC, argued for the Intervenor Defendant.

RESTANI, Judge:

This action challenges the Department of Commerce's ("Commerce") final results rendered in the first antidumping ("AD") review of certain steel threaded rods ("STR") from the People's Republic of China ("PRC"). See Certain Steel Threaded Rod from the People's Republic of China: Final Results and Final Partial Rescission of Antidumping Duty Administrative Review, 76 Fed. Reg. 68,400 (Dep't Commerce Nov. 4, 2011) ("Final Results"). Plaintiff Hubbell Power Systems, Inc. ("Hubbell") and Gem Year Industrial Co., Ltd., ("Gem Year") (collectively "Plaintiffs") moved for judgment on the agency record.[1] See Pls.' Joint Br. in Supp. of Mot. for J. on the Agency R. Pursuant to Rule 56.2 ("Pls.' Br."). The Government and Vulcan Threaded Products ("Vulcan") filed briefs in opposition. Def.'s Resp. to Pls.' Joint Mot. for J. Upon the Agency R. ("Def.'s Br."); Def.-Intrvr.'s Resp. Br. in Opp'n to Pls.' Joint Mot. for J. Upon the Agency R. ("Vulcan Br."). For the reasons set forth below the court remands this matter for further action in conformity with this opinion.

## BACKGROUND

In April 2009, Commerce published an AD duty order on STR from the PRC. Certain Steel Threaded Rod from the People's Republic of China: Notice of Antidumping Duty Order, 74 Fed. Reg. 17,154 (Dep't Commerce Apr. 14, 2009). The PRC-wide entity received a rate of 206.00%. Id. at 17,156. Gem Year did not participate in the original AD investigation

---

[1] This action was consolidated with Court No. 11-00480, in which Gem Year is the plaintiff, making Gem Year a consolidated plaintiff here. Order at 2, March 14, 2012, ECF No. 27.

and thus, did not receive its own rate. Id. at 17,156; see also Certain Steel Threaded Rod from the People's Republic of China: Preliminary Results of the First Administrative Review and Preliminary Rescission, in Part, 76 Fed. Reg. 26,696, 26,704 (Dep't Commerce May 9, 2011) ("Preliminary Results").

In May 2010, Commerce began the first administrative review for the period of review ("POR") of October 8, 2008 through March 31, 2010. Initiation of Antidumping and Countervailing Duty Administrative Reviews, 75 Fed. Reg. 29,976, 29,978 (Dep't Commerce May 28, 2010) ("Initiation Notice"). Gem Year is a PRC producer and exporter of STR. Gem Year's Section C and D Response (Nov. 23, 2012), App. of Exs. for Pls.' Joint Br. in Supp. of their Mot. for J. on the Agency R. Pursuant to Rule 56.2 ("Pls.' App."), Tab 6 at 2; Gem Year Separate Rate Application (Aug. 3, 2010), Pls.' App. Tab 4 at 6–7.

Gem Year requested to be reviewed as a voluntary or mandatory respondent so that it could obtain its own rate. Gem Year Request to be Reviewed (Apr. 1, 2010), Pls.' App. Tab 1 at 1; Gem Year's Request to be a Voluntary Respondent (Apr. 21, 2010), Pls.' App. Tab 3. Gem Year voluntarily submitted quantity and volume data to Commerce. Gem Year Comments on Respondent Selection (June 7, 2010), Pls.' App. Tab 2 at 3. U.S. Customs and Border Protection ("CBP" or "Customs") data did not list Gem Year as an exporter of STR during the POR. CBP Data for Respondent Selection (June 7, 2010), Vulcan App. Tab 5 at Attach. 1.

In August 2010, Gem Year submitted a separate rate application in order to establish its independence from the PRC government. See Gem Year Separate Rate Application (Aug. 3, 2010), Pls.' App. Tab 4. In September 2010, Commerce selected Gem Year as one of two mandatory respondents because, based on the sales data submitted by Gem Year, Gem Year

Court No. 11-00474 Page 4

was the second-largest exporter during the POR.  <u>Selection of Respondents for Individual Review</u> (Sept. 24, 2010), Def.'s Confidential App. in Supp. of its Opp'n to Pls.' Mot. for J. upon the Agency R. ("Def.'s App.") Tab 1 at 5–6.  Throughout the review, Gem Year submitted its questionnaire responses to Commerce.  <u>Preliminary Results</u>, 76 Fed. Reg. at 26,696–97.

In November 2010, Commerce notified Gem Year that the record did not contain evidence that Gem Year made a sale to the United States during the POR that resulted in suspension of liquidation and warned that the review could be rescinded as a result.  <u>Request for Proof of Suspended Entry</u> (Nov. 5, 2010), Def.'s App. Tab 2 at 2.  Gem Year submitted entry documentation that purportedly showed relevant entries between October 2008 and April 2009.  <u>Gem Year Submission</u> (Nov. 12, 2010), Pls.' App. Tab 8.  Gem Year later stated that the unaffiliated U.S. importer, Hubbell, had made an error and, as a result, the suspension of liquidation did not occur and all of the entries during the POR had been liquidated.  Pls.' Br. 4; <u>see also</u> <u>Gem Year Letter Regarding Liquidation Status of POR Entries</u> (Nov. 17, 2010), Vulcan App. Tab 20 at 1.

In December 2010, Commerce stated its intention to rescind Gem Year's review because there was no evidence that Gem Year made a sale to the United States during the POR that resulted in suspension of liquidation pursuant to the AD order on STR.  <u>See</u> <u>Replacement Respondent Selection Memorandum</u> (Dec. 7, 2010), Vulcan App. Tab 22 at 2–3.  Commerce replaced Gem Year with a different mandatory respondent, who refused to cooperate, leaving one cooperating mandatory respondent, RMB Fasteners Ltd. and IFI & Morgan Ltd. ("RMB/IFI Group").  <u>Id.</u> at 3; <u>Preliminary Results</u>, 76 Fed. Reg. at 26,697.

In May 2011, Commerce confirmed its intention to rescind Gem Year's review

because the record lacked evidence of suspended entries.  Preliminary Results, 76 Fed. Reg. at 26,697.  In November 2011, Commerce published the Final Results, in which Commerce calculated a de minimis dumping margin for the cooperating mandatory respondent, calculated an all-other's rate of 55.16%, and applied a 206.00% rate to the PRC-wide entity.[2]  Final Results, 76 Fed. Reg. at 68,404; see also Certain Steel Threaded Rod from the People's Republic of China: Issues and Decision Memorandum for the Final Results of the 2008–2010 Administrative Review, A-570-932, POR: 10/08/08–3/31/10, at 2–7 (Oct. 31, 2011), available at http://ia.ita.doc.gov/frn/summary/prc/2011-28649-1.pdf (last visited July 19, 2012) ("Issues and Decision Memorandum").  The Final Results also affirmed Commerce's decision to rescind Gem Year's review and noted Gem Year's ineligibility for separate rate consideration.  Final Results, 76 Fed. Reg. at 68,402.  The result under Commerce's approach is that the PRC-wide rate will be the deposit rate for Gem Year until it is permitted to establish its separate entity status.  See id. at 68,404.

---

[2] Because the only available rates here were either de minimis or based on facts available ("FA"), Commerce determined the all-other's rate by using the rate calculated in the most recent segment of the proceedings that was not de minimis, zero, or based on FA.  Final Results, 76 Fed. Reg. at 68,402–03.  The 55.16% rate was calculated for the RMB/IFI Group during the original less than fair value investigation and is the only calculated rate in any segment of these proceedings.  Id.; see Certain Steel Threaded Rod from the People's Republic of China: Final Determination of Sales at Less Than Fair Value, 74 Fed. Reg. 8907, 8909–10 (Dep't Commerce Feb. 27, 2009).
   The 206.00% PRC-wide rate is based on adverse facts available ("AFA") and was the highest percent margin alleged in the Petition.  Final Results, 76 Fed. Reg. at 68,403.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c). The court will not uphold Commerce's final determination in an AD review if it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law . . . ." 19 U.S.C. § 1516a(b)(1)(B)(i).

## DISCUSSION

### I. Review of Gem Year

Plaintiffs argue that Commerce's decision to rescind the review of Gem Year was not supported by substantial evidence or in accordance with the law and request a remand for a full review of Gem Year. Pls.' Br. 8. Plaintiffs argue that (1) Commerce's policy against reviewing liquidated entries is inconsistent with the law and (2) that a full review is required to determine Gem Year's cash deposit rate. Defendants rebut both arguments by relying on Allegheny Ludlum Corp. v. United States, 346 F.3d 1368 (Fed. Cir. 2003). Def.'s Br. 10–12.

#### A. Commerce's policy

Plaintiffs argue that the recision of Gem Year's review is not consistent with the statute and Commerce's regulation. Pls.' Br. 8–13. Defendant argues that Commerce acted in accordance with its policy of not conducting reviews of liquidated entries, which Defendant argues was upheld by the Federal Circuit in Allegheny Ludlum. Def.'s Br. 9.

Commerce has not explained how its decision to ignore Gem Year's merchandise is consistent with the statute or its regulation, especially in the Non-Market

Economy ("NME") context.[3]  The statute requires Commerce to conduct a review of "each entry" of subject merchandise that occurred during the period of review.  19 U.S.C. § 1675(a).  Here, Commerce has not disputed that Gem Year's subject merchandise entered the United States during the period of review.  Commerce has not explained how it reconciles its obligation to review entries with its refusal to review Gem Year's merchandise, which clearly entered the United States during the POR.

Commerce's singular explanation is that one of the primary purposes of an administrative review is to determine final assessment rates for entries suspended from liquidation.[4]  Although this is one purpose of a review, Commerce has not considered that reviews have other functions that are wholly unrelated to liquidation, especially in the NME context.  Administrative reviews for NMEs determine individual rates, a PRC-wide rate, and an all-other's rate for assessment and deposit purposes.  See, e.g., Final Results, 76 Fed. Reg. at 68,402–03.  Under the statute, the all-other's rate is intended to be calculated based on the

---

[3] The court does not doubt that Commerce has a general policy of not reviewing liquidated entries and that it has applied that practice in the past.  See Certain Tissue Paper Products from the People's Republic of China: Preliminary Results and Partial Rescission of Antidumping Duty Administrative Review, 73 Fed. Reg. 18,497, 18,500 (Dep't Commerce Apr. 4, 2008) ("Tissue Paper Preliminary Results") (noting past practice of not reviewing liquidated entries and citing reviews).  The parties have not provided, and the court has been unable to find, any instance where this policy was subject to judicial review.

[4] Commerce does not provide an explanation for this policy in the current review but cites to Tissue Paper.  In Tissue Paper, Commerce rescinded the review of a respondent that lacked suspended entries.  Tissue Paper Preliminary Results, 73 Fed. Reg. at 18,500.  Commerce noted that "one of the Department's primary functions in the course of an administrative review is to determine the appropriate antidumping duty margin to apply to subject merchandise, for the purpose of directing CBP to liquidate suspended entries of subject merchandise at that rate."  Id. (citing 19 U.S.C. § 1675(a)(2)(C)).

weighted average of non-de minimis and non-FA dumping margins of the respondents individually examined.[5] 19 U.S.C. § 1673d(c)(5)(A). Whether the entries of the individually examined respondents have been liquidated does not appear to be relevant under the statute to the determination of the all-other's rate. Furthermore, in NME reviews, respondents not individually examined must demonstrate independence from state control in order to receive the all-other's rate and avoid a prohibitive PRC-wide rate. There are, therefore, multiple functions and purposes of reviews, especially in the NME context, that are not directly related to liquidation.

Here, Gem Year would have been individually examined but for premature liquidation of its entries. The exclusion of one of the largest exporters of subject merchandise is likely to result in a less accurate all-other's rate, especially when the only other mandatory respondent received a de minimis rate. Commerce has not explained how its decision not to review Gem Year's entries is consistent with its statutory obligation to review entries or how its policy can be justified in light of Commerce's NME methodology.

Commerce's regulation permits it to rescind a review of an individual exporter "if the Secretary concludes that, during the period covered by the review, there were no entries, exports, or sales of the subject merchandise, as the case may be." 19 C.F.R. § 351.213(d)(3).

---

[5] Because Commerce often restricts its reviews to one or two companies or requests for reviews are withdrawn based on "settlements" with the petitioners, it is sometimes difficult to obtain an average of non-de minimis and non-FA rates. Commerce then reverts to some other "reasonable" method under 19 U.S.C. § 1673d(c)(5)(B). Although this calculation methodology is set out in the part of the statute dealing with initial investigations, there appears to be no reason why it would not be applicable to reviews of the orders arising from such investigations. If Commerce has a reason for deviating from this approach in administrative reviews, it has not explained it.

Defendant has not disputed that Gem Year had exports and sales of subject merchandise or that its subject merchandise entered the United States during the POR. Thus, Gem Year does not seem to lack "entries, exports, or sales of the subject merchandise" and Commerce's recision of the review is not consistent with the regulation. Although Commerce appears to interpret "entries" to mean "liquidated entries" for purposes of the statute and regulation, Commerce has never formally articulated this position or provided an explanation for it that would make the meaning of its regulation clear to the parties affected by it.

Vulcan argues that if Commerce reviewed liquidated entries, importers would have no incentive to properly classify the merchandise upon entry and this would disrupt the U.S. retrospective system. Vulcan Br. 21. Commerce did not supply this explanation on the record, and thus, it cannot support Commerce's policy. Regardless, Commerce has chosen to address potentially unlawful conduct by referring the matter to Customs for investigation and enforcement. Commerce cannot now argue that its chosen enforcement method is ineffective. At least in theory, Custom's enforcement powers would seem effective at deterring importers from mis-classifying entries, because Customs is authorized in non-intentional conduct cases to collect as a penalty up to four times the duties that should have been paid and higher penalties in the event of fraud, in addition to collecting the duties owed. 19 U.S.C. § 1592(c), (d).

Moreover, once Commerce refers the entries to Customs for investigation and enforcement, assessment of duties on the entries becomes an open issue. If Customs establishes a violation of 19 U.S.C. § 1592 has occurred, the statute provides that Customs "shall require that such lawful duties, taxes, and fees be restored . . . ." Id. § 1592(d). Thus, even if the entries were prematurely liquidated without the assessment of full duties, Customs will require the

delinquent importer to pay the duties owed on those entries. It is, therefore, not futile for Commerce to calculate a rate for liquidated entries because the liquidation will not bar collection of the duties in such a case. If Customs establishes liability under 19 U.S.C. § 1592, the calculated rate will be used to assess duties and determine penalties.

Contrary to Defendant's argument, Allegheny Ludlum did not uphold the policy Commerce applied in this case, and it does not control the disposition of this case. Allegheny Ludlum differs from this case in at least two significant respects. First, Allegheny Ludlum involved a market economy country, and thus, the Federal Circuit did not address aspects that are unique to NME reviews, such as PRC entity rates, non-PRC entity separate rates, and PRC-entity cash deposit rates that may prevent importation entirely. See 346 F.3d at 1369. Unlike in Allegheny Ludlum, the review here would not only determine Gem Year's rate, it would also determine whether Gem Year is entitled to a separate rate, which has significant implications for the subsequent POR.

Second, in Allegheny Ludlum, there were no entries of subject merchandise during the period of review, liquidated or otherwise. See id. at 1374 (holding lawful "Commerce's regulatory policy of rescinding annual reviews and hence not updating cash deposit rates where there are no entries during the period of review . . .") (emphasis added). Allegheny Ludlum addressed the relationship between pre-POR entries and POR sales; it did not address the implications of liquidated POR entries versus suspended entries. See id. at 1370. In Allegheny Ludlum, the exporter had POR sales. Id. at 1370–71. In contrast, Gem Year argues that it is entitled to a review because it has POR entries. See Pls.' Reply 2. Thus, unlike in Allegheny Ludlum, Gem Year's argument is supported by the text of the statute, which refers

exclusively to entries and not to sales.  19 U.S.C. § 1675(a)(2); see also Allegheny Ludlum, 346 F.3d at 1371 (noting the plain language of the statute refers exclusively to entries).[6]  Allegheny Ludlum, therefore, did not address the determinative issue here of whether, in a NME case, Commerce may decline to review entries of subject merchandise that entered during the POR, but were not suspended from liquidation.

At oral argument, Defendants stated that there is no practical difference in calculating rates for exporters with merchandise tied to liquidated entries versus suspended entries.  Commerce cannot justify its policy of not reviewing liquidated entries from a practical standpoint, and it cannot square its practice with its own regulation or the statutory language.  Commerce's reliance on Allegheny Ludlum fails to explain how its policy conforms to the statute and regulation, especially in the NME context.

**B.    Cash deposit rate**

Plaintiffs argue that even if the entry of Gem Year's merchandise does not qualify as an "entry" for purposes of assessing duties under the statute or regulation, Commerce should complete Gem Year's review because the review will set Gem Year's cash deposit rate.  Pls.' Br. 10.  Defendants argue that this argument is foreclosed by Allegheny Ludlum. Def.'s Br. 13.

Commerce attempts to justify its policy by noting that a primary purpose of a review is to set the final assessment rates.  See Tissue Paper Preliminary Results, 73 Fed. Reg. at 18,500 (citing 19 U.S.C. § 1675(a)(2)(C)).  The statute is clear that a purpose of the review is to set future cash deposit rates.  19 U.S.C. § 1675(a)(2)(C).  Thus, the statute recognizes the cash

---

[6] The court is not called upon here to determine if 19 C.F.R. § 351.213(d)(3) is consistent with the view of the statute expressed in Allegheny Ludlum.

deposit rates are an important aspect of administrative review.

In <u>Allegheny Ludlum</u>, the plaintiff argued that an administrative review was required in order to update the cash deposit rate. 346 F.3d at 1372. The Federal Circuit rejected this argument stating that "where there are no entries . . . during a period of review there is no subject merchandise and thus nothing to review and no basis for revising cash deposit rates - so Commerce need not (indeed, cannot) conduct a review)." <u>Id.</u> Merchandise must enter during the POR in order to qualify as subject merchandise. <u>See id.</u> Because the entries in <u>Allegheny Ludlum</u> occurred prior to the POR, the exporter's merchandise was not "subject merchandise." <u>Id.</u> at 1371–72. Thus, in <u>Allegheny Ludlum</u>, there were neither entries nor subject merchandise, and under such circumstances, the Federal Circuit found that Commerce need not update the cash deposit rate. <u>Id.</u> at 1373. Here, Defendant does not dispute that Gem Year's merchandise entered during the POR or that it qualifies as subject merchandise. Thus, the lack of subject merchandise and entries is not at issue and data are available for Commerce to determine Gem Year's deposit rate, even if Customs ultimately will not be able to assess antidumping duties on the entries.

NME methodology has a significant impact on an exporter's interest in obtaining a calculated cash deposit rate during a review, which was not at issue in <u>Allegheny Ludlum</u>. In <u>Allegheny Ludlum</u>, the exporter had an existing deposit rate that was based on its own data and was calculated in the prior administrative review. <u>Id.</u> at 1371. The result of rescinding the review was that the exporter would continue to pay a deposit rate based on its one-year-old data. In contrast, the result of rescinding the review of Gem Year is that Gem Year will pay the PRC-wide rate of 206%. Here, the PRC-wide entity rate is an AFA rate derived from the petition and

is not based on the verified behavior of any company under review. Final Results, 76 Fed. Reg. at 68,403. Although the interest in Allegheny Ludlum of obtaining an updated rate was insufficient to require a full review in the light of the lack of entries, Gem Year's significantly greater interest in obtaining a separate deposit rate and the potential application of an unrelated and import-prohibiting PRC-rate is sufficient to require a review of Gem Year, which does have entries.

Commerce has not adequately explained how its decision to rescind Gem Year's review is consistent with the statute and regulation, especially in the context of prohibitive PRC-wide deposit rates. Thus, Gem Year, as an exporter not found to be responsible for the behavior of its importer, is entitled to a review. At this late stage, the parties may choose to resolve this matter by agreeing not to reopen the investigation to complete a full examination of Gem Year and instead may merely choose to apply the all-others rate for Gem Year, as explained below.

## II.     Separate Rate Application

Plaintiffs argue in support of their alternative claim for relief that Commerce cannot ignore Gem Year's separate rate application merely because Gem Year was not part of the review and request that the court remand for a complete separate rate analysis. Pls.' Br. 16–20. Defendant does not address this issue on the merits and instead argues that Gem Year failed to present a justiciable case or controversy. Def.'s Br. 18–20. Vulcan argues that a respondent must have suspended entries in order to be eligible to participate in a review and qualify for a separate rate. Vulcan Br. 27–30.

Constitutional justiciability is not lacking in this case. Plaintiffs stated that the rescission of Gem Year's review and the application of the PRC-wide entity deposit rate of

206% prevents Gem Year and Hubbell from buying and selling subject merchandise. The application of a rate that prevents a company from buying and selling is an injury in fact, regardless of whether the rate is for cash deposit or final assessment purposes. Furthermore, a remand would provide an effective remedy because it could modify the prohibitive cash deposit rate currently applicable to Gem Year's future entries. Cf. PPG Indus., Inc. v. United States, 660 F. Supp. 965, 968 (CIT 1987) (finding dispute over future deposit rates moot when subsequent review already set new deposit rates). The court, therefore, turns to the merits.

In refusing to consider Gem Year's application, Commerce stated that it had "determined that Gem-Year does not meet the requirements to participate in this review. Therefore, the Department is not assessing Gem Year's eligibility for a separate rate in the context of this review." Preliminary Results, 76 Fed. Reg. at 26,698. Commerce explained that "if a respondent is not eligible to participate in a review as a mandatory respondent, it is also not eligible to become a separate rate respondent." Issues and Decision Memo 6.

All PRC exporters are presumed by Commerce to be part of the PRC-wide entity until an exporter establishes independence from state control. Sigma Corp v. United States, 117 F.3d 1401, 1405–06 (Fed. Cir. 1997) (upholding Commerce's presumption of state control for NME-exporters). The presumption of state control, although upheld more than a decade ago, may not have a current factual basis.[7] See, e.g., Qingdao Taifa Grp. Co. v. United States, 760 F. Supp. 2d 1379, 1382 (CIT 2010). Assuming arguendo that the presumption is valid and in accordance with law, Commerce may apply it only if it provides respondents with the

---

[7] The court need not address this issue because Plaintiffs have not challenged the presumption itself but merely argued Gem Year was denied its right to rebut the presumption.

opportunity to rebut the presumption. Sigma, 117 F.3d at 1405.

The statute does not provide for this separate rate process as part of an administrative review process. See 19 U.S.C. § 1675(a)(1)(B). Instead, Commerce has made the choice to insert the separate rate process it has established into the administrative review process. Commerce has not suggested that the statute prevents a separate rate analysis of Gem Year or that the liquidation of entries has any bearing whatsoever on the separate rate analysis. Commerce has merely stated that an exporter is not eligible for a separate rate analysis unless the exporter is part of the review. Commerce cannot justify its policy merely by re-stating its own policy choice.

The court has treated the review process of administratively examining sales and the separate rate process as two distinct inquires. For instance, the failure of an exporter to fully cooperate in another aspect of the administrative review does not permit Commerce to avoid conducting a full separate rate analysis if the exporter supports its request for status separate from the PRC. See Shandong Huarong Gen. Grp. Corp. v. United States, 27 CIT 1568, 1594 (2003) (stating that Commerce's finding that an exporter failed to cooperate in a review cannot be used to assume respondent failed to establish independence from government control). Commerce must base its separate rate analysis on the record evidence specific to the question of whether the company is subject to state control. See Foshan Shunde Yongjian Housewares & Hardware Co. v. United States, 2011 Ct. Intl. Trade LEXIS 123, at *47 (CIT Oct. 12, 2011) (remanding denial of separate-rate status when finding was "not based on record evidence specific to the question of whether the company is subject to state control"). Moreover, Commerce cannot disregard record evidence of independence when applying the presumption of

state control. See E. Sea Seafoods, 703 F. Supp. 2d at 1355 ("Commerce's application of the presumption of state control, without considering abundant record evidence rebutting that very presumption, pushed legal fiction into the realm of legal fantasy."). These cases demonstrate that Commerce cannot use unrelated findings in a review to avoid a separate rate analysis. If Commerce declines to grant Gem Year separate rate status, it must do so based on the record evidence, or the lack of record evidence, related specifically to Gem Year's status.

Here, Commerce improperly used its findings as to whether it would examine Gem Year's sales as a substitute for a separate rate analysis and ignored record evidence related to Gem Year's separate rate status. This is not a case where it is merely hypothetical whether Gem Year can establish entitlement to a separate rate. Here, Gem Year timely submitted a 606 page separate rate application. Gem Year's Separate Rate Application (Aug. 3, 2010), C.R. 14, Pls.' App. Tab 4. Commerce has not suggested that there was any defect in the application.[8] Commerce cannot ignore this record evidence merely because it labels the separate rate application process part of the administrative review process.

Defendant argues, without any regard to reality, that Commerce merely rescinded the review and did not apply the PRC-wide entity rate to Gem Year and thus, there is no

---

[8] Vulcan argues that permitting a full review or a separate rate analysis of Gem Year is insufficient to protect its interests. The domestic industry is not harmed by Commerce's review of a large exporter of subject merchandise because this will lead to more accurate dumping margins. Moreover, the domestic industry is not harmed in any legally cognizable sense when an exporter that can establish its independence from state control is relieved from paying the PRC-wide entity deposit rate.

presumption for Gem Year to rebut. Def.'s Br. 19 n.3.[8] The application of the 206% rate is based solely on a presumption that Gem Year is part of the PRC-wide entity, and therefore, Gem Year must have the opportunity to rebut the presumption. Transcom Inc v. United States, 182 F.3d 876, 883 (Fed. Cir. 1999) ("[A] party that is subject to the presumption has a right to attempt to rebut it."). Under the facts of this case, Gem Year has a right to attempt to rebut the presumption of state control regardless of whether that assumption is used to determine the cash-deposit rate or the final duty rate.

Furthermore, because this review sets a PRC-wide entity rate based on AFA, which Gem Year challenges, and because that PRC-wide rate is applied to Gem Year for cash deposit purposes, Commerce is essentially applying an AFA rate to Gem Year. In order to apply an AFA rate to a party such as Gem Year, which seeks to comply with its requirements, Commerce must determine either that Gem Year has failed to cooperate by not acting to the best of its ability or that Gem Year's separate rate application failed to rebut the presumption of state control. 19 U.S.C. § 1677e(b).[9] Here, Commerce did not make either finding. Moreover, Commerce cannot rely on an unaffiliated party's failure to cooperate to justify the application of the AFA rate, unless the exporter is also found responsible for the behavior in some way. See 19 U.S.C. § 1677e(b) (noting that Commerce must determine that a party did not act "to the best of

---

[8] Commerce's view is that the 206% rate, which stems from the investigation, is not subject to challenge because no one entitled to a review has challenged it. Final Results, 76 Fed. Reg. at 68,403. In this case, Gem Year has challenged the continuation of the rate as the PRC-wide rate for the administrative review. Commerce concedes that these issues are open if Gem Year is reviewed. See Def.'s Br. 20 n.4.

[9] Because Commerce does not view this as even a facts available situation it did not comply with the other requirements of 19 U.S.C. § 1677e.

its ability") (emphasis added); see also SKF USA, Inc. v. United States, 675 F. Supp. 2d 1264, 1275–77 (CIT 2009) (finding unlawful the application of an AFA rate to a cooperative respondent in order to encourage the compliance of an unaffiliated supplier). Here, Commerce cannot use the unaffiliated importer's failure to properly classify the entries as justification for applying an AFA rate to Gem Year. See Nippon Steel Corp. v. United States, 337 F.3d 1373, 1382 (Fed. Cir. 2003) (requiring Commerce to examine respondent's actions and assess the extent of respondent's abilities, efforts, and cooperation before applying adverse inferences); see also Tianjin Magnesium Int'l Co. v. United States, 2011 Ct. Int'l Trade LEXIS 16, at *5–10 (2011) (rejecting the application of an AFA rate based on the actions of another party). And Gem Year has not been found to be part of an entity subject to an AFA rate. The application of the AFA rate to Gem Year at this stage is therefore inconsistent with the statute and unsupported by the record.

Commerce has not made a finding that Gem Year failed to rebut the presumption of state control or that it failed to cooperate, and Commerce cannot use its decision not to examine Gem Year's sales to avoid a separate rate analysis. Thus, Commerce has not justified its refusal to consider Gem Year's application and to apply the PRC-wide AFA rate to Gem Year's future entries.

### III.　　AFA Rate

Plaintiffs argue that the 206% PRC rate is unlawful and unsupported by substantial evidence. Pls.' Br. 20–28. Defendant argues that Plaintiffs failed to present a justiciable case or controversy because Commerce made no determination as to the appropriate dumping rate for Gem Year's entries. Def.'s Br. 19. Defendant further argues that Plaintiffs

lack standing to challenge the PRC-wide entity rate because Gem Year has not been found to be part of the PRC-wide entity and thus, technically, did not receive the PRC-wide rate. Def.'s Br. 19 n.3. According to Defendant, it just had its review rescinded. Id.

This issue is justiciable and Plaintiffs have standing to challenge the PRC-wide rate because, whatever strange logic is used by Defendant, that is the rate applied to Gem Year's entries going forward and Gem Year has requested a review. See 19 U.S.C. § 1675(a)(1); 19 C.F.R. § 351.212(a),(c). As explained above, Plaintiffs' inability to export or import merchandise as a result of Commerce's actions in this case and the imposition of a 206% rate if it can continue in the market satisfy the injury in fact requirement. However it gets there, Commerce will impose a 206% rate and Gem Year may challenge that rate.

Although it is not the thrust of their action, Plaintiffs challenge the rate as both unrelated to Gem Year and to the commercial reality of the industry. What specific evidence it relies on has not been explained clearly, but it was not permitted to develop a record on this point. The court, however, need not reach the merits of this issue at this stage in the proceedings because Gem Year may be found to be separate from the PRC and its cash deposit rate may change on remand. Furthermore, if Commerce, after reviewing the record, finds that Gem Year is part of the PRC-wide entity and continues to impose a 206% rate, Commerce will consider Gem Year's challenge to that rate, as Commerce observes. See supra n.8.[10]

---

[10] Whatever relief Hubbell obtains would be entirely derivative of Gem Year's. It is Gem Year, as the exporter, which is entitled to a review. Because Gem Year has requested the review, the court need not examine what separate rights Hubbell might have.

Court No. 11-00474 Page 20

## CONCLUSION

For the foregoing reasons, the court remands this matter to Commerce for, at a minimum, a complete review of Gem Year's separate rate application. If Gem Year is entitled to a separate rate and the parties do not agree otherwise, Commerce will also conduct a full examination of Gem Year's sales. If Commerce determines that Gem Year is not entitled to a separate rate, Commerce must consider Gem Year's challenge to the 206% rate.

Commerce shall file its remand determination with the court within 60 days of this date, unless a full review is undertaken. In such a case, Commerce will advise the court within that period what additional time is required. The parties have 30 days thereafter to file objections to the remand results, and the Government will have 15 days thereafter to file its response.

                                                    /s/ Jane A. Restani
                                                    Jane A. Restani
                                                           Judge

Dated: This 20th day of September, 2012.
      New York, New York.